**Vincent FARDELLA, Appellee,**

v.

**William L. GARRISON, Warden; Cecil C. McCall, Chairman, U.S. Parole Commission, Appellants.**

**No. 82–6171.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 2, 1982.

Decided Dec. 23, 1982.

Robert W. Jaspen, Asst. U.S. Atty., Richmond, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellants.

Judith E. Schaeffer, Washington, D.C. (Justin D. Simon, Dickstein, Shapiro & Morin, Washington, D.C., Dennis W. Dohnal, Bremner, Baber & Janus, Richmond, Va., on brief), for appellee.

Before MURNAGHAN, Circuit Judge, and BUTZNER and FIELD, Senior Circuit Judges.

BUTZNER, Senior Circuit Judge:

The United States Parole Commission appeals from an order of the district court directing it to reclassify the parole status of Vincent Fardella, a federal prisoner. We reverse because (a) the Commission was authorized to reopen the prisoner's parole proceedings on the basis of information that it had not considered when it initially determined the prisoner's parole status, even though the information was in existence at that time; and (b) the Commission's action did not create a presumption of vindictiveness.

I

Fardella was sentenced to 15 years imprisonment for his participation in an arson that destroyed a retail store. In calculating his presumptive parole release date, the Commission classified Fardella's offense severity as "Greatest I," a category defined as including:

> Arson or explosive detonation [involving potential risk of physical injury to person(s) (e.g., premises occupied or likely to be occupied)—no serious injury occurred]. (brackets in original) [1]

The Regional Commissioner notified Fardella: "Your offense behavior has been rated as Greatest I severity because you commit-

1. 28 C.F.R. § 2.20.

ted an arson involving detonation of explosives."[2] Fardella unsuccessfully appealed through administrative channels, claiming that the Commission failed to make a finding that the arson involved a potential risk of physical injury to persons as required by its regulations.

After exhausting his administrative remedies, Fardella filed a petition for a writ of habeas corpus. During the pendency of that action, the Commission conceded that it had erred by failing to make a finding of potential risk of physical injury. It proposed, however, to reopen the case under 28 C.F.R. § 2.28(f), which provides for reopening a parole determination "[u]pon receipt of new and significant adverse information." The Commission stated that it had received new information, including an extract of Fardella's trial transcript which disclosed that two firemen were injured and that other firemen were endangered. The Commission took the position that it should be afforded an opportunity to reopen the case on the basis of this information to consider whether the potential risk of physical injury the fire posed to the firemen was sufficient to warrant a "Greatest I" classification.

The district court held that the Commission's decision to reopen the case was unauthorized because the Commission "neglected to observe its own regulation governing the reconsideration of parole determinations." The court concluded that the information was not "new" because it was in existence and available to the Commission at the time of the initial parole hearing; furthermore, the information could have been considered earlier by the Commission had any of it been "relevant to the severity rating." The court stated that it doubted whether a risk of injury to firemen could ever justify a

"Greatest I" classification, noting that a "potential risk of injury to firemen is present in every fire." Consequently, the court ordered the Commission to reduce Fardella's offense severity rating from "Greatest I" to "Very High" and recalculate his earlier presumptive parole release date accordingly.

## II

■ Title 18 U.S.C. § 4203(a)(1) directs the Commission to establish guidelines for parole. Pursuant to this authority, the Commission has promulgated regulations, codified at 28 C.F.R. § 2.1 et seq., and a Rules and Procedures Manual. District courts can review a prisoner's claim that the Commission has failed to follow pertinent constitutional, statutory, or regulatory provisions. See Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir.1981).

To define the term "new information," the district court turned to § 114(4) of the Commission's procedure manual, which describes new information as "information not in existence at the time of the Regional Commissioner's Review."[3] Because the transcript was in existence at the time of the initial review, the district court concluded that the commission violated its rules and regulations by relying on the information the transcript disclosed as the basis for reopening Fardella's parole determination.

The definition in the manual on which the district court relied deals with a procedure quite different from reopening parole determinations. In essence, § 114(4) provides that when a prisoner presents to the National Appeals Board information that was not in existence when the Regional Commissioner reviewed the file, the Board

**2.** The notice of action issued by the Regional Commissioner suggested that Fardella serve 84 months, a presumptive parole release date within the guideline range of 78–100 months. This was later reduced to 78 months for reasons not involved in this appeal.

**3.** Section 114(4) is now codified in the U.S. Parole Commission Rules and Procedures Manual § 2.26–04 at 38 (March 1, 1982):

When information submitted as part of an appeal to the National Appeals Board is new information of a significant nature (information not in existence at the time of the Regional Commissioner's Review), the National Appeals Board will customarily affirm the order and return the case to the Regional Commissioner with a memo bringing the new information to the Regional Commissioner's attention.

usually should remand the case to the Regional Commissioner for his initial consideration of the new information.

■ In contrast, 28 C.F.R. § 2.28 describes the kinds of new information that justify reopening "[n]otwithstanding the appeals procedure .... " A parole determination may be reopened at any time upon "receipt of new information of substantial significance favorable to the prisoner,"[4] or upon "receipt of new and significant adverse information."[5] For the purpose of reopening, the manual describes "new adverse information" as follows:

> This subsection [28 C.F.R. § 2.28(f)] is the appropriate mechanism for reopening cases to consider new information about the prisoner's original offense behavior or earlier criminal activities that would have resulted in a different decision had the information been presented to the Commission at the time of the initial parole hearing.[6]

This definition places emphasis on the effect the new information would have had at the initial hearing if it had been considered, and not on whether it was in existence at that time. We conclude, therefore, that the Commission's regulations and rules allow it to reopen a case under § 2.28(f) on the basis of previously existing information that was not considered at the initial hearing.

The Commission's interpretation of the term "new information" has been sustained by other courts. *Fox v. United States Parole Commission,* 517 F.Supp. 855 (D.Kan.), aff'd, No. 81-1432 (10th Cir. Nov. 23, 1981); *Iuteri v. Nardoza,* 662 F.2d 159, 161 (2d Cir.1981); *McClanahan v. Mulcrome,* 636 F.2d 1190, 1191 (10th Cir.1980). The rationale of these decisions is that the Commission is not an investigative agency. Its duty is to review information that has been furnished by other government agencies, the courts, and the prisoner. Consequently, information is new if it is received by the Commission after the initial parole determi-

nation even though it was in existence prior to that time.

Fardella relies on *Ready v. United States Parole Commission,* 483 F.Supp. 1273 (M.D. Pa.1980), where the court found that certain information was not "new" because the Commission had been aware of the substance of that information when it granted parole and had failed to investigate it at that time. The court held that "[t]heir failure to seek such information about an event brought to their attention precludes them from relying upon subsequently discovered information to rescind Ready's parole." 483 F.Supp. at 1277. We cannot accept the opinion's suggestion that the Commission is under an obligation to investigate and supplement its files. We note, however, that *Ready* did treat other information as "new" where the Commission was unaware of it and therefore did not consider it earlier. To this extent, *Ready* is consistent with *Fox, Iuteri,* and *McClanahan, supra.*

■ Though the extract from the transcript of Fardella's trial was in existence at the time he was classified for parole, the Commission did not receive it until much later. The transcript, which furnished information about the injuries to firemen, had not been included in Fardella's file. Therefore, in accord with the cited decisions of the Second and Tenth Circuits, we conclude that the extract from the transcript was new information justifying the Commission to reopen Fardella's case pursuant to 28 C.F.R. § 2.28(f).

■ We also conclude that the Commission, not the district court, should make the initial decision whether risk of injury to firemen satisfies the requirements of the Greatest I classification set forth in 28 C.F.R. § 2.20. An "agency, and not the reviewing court, is to be accorded the first opportunity to construe its own regulations." *F.T.C. v. Atlantic Richfield Co.,* 567 F.2d 96, 103 (D.C.Cir.1977).

---

4. 28 C.F.R. § 2.28(a).

5. 28 C.F.R. § 2.28(f).

6. U.S. Parole Commission Rules and Procedures Manual § 2.28–02(f) at 42 (March 1, 1982).

The district court noted that Fardella's co-defendants were not classified Greatest I because the Commission expressly found that the fire posed no risk of injury. The classification of the co-defendants, while pertinent to the Commission's classification of Fardella, does not preclude reopening, because the record does not disclose that the Commission had been informed of the injury to firemen at the time it classified the co-defendants.[7]

### III

Finally, Fardella argues that even if we find the district court erred, we should affirm its judgment on the ground that the Commission's conduct is "tainted with vindictiveness." Although Fardella initially contended that the facts gave rise to an appearance of retaliation, the district court found it unnecessary to address this issue. The government does not oppose a remand to the district court for initial consideration of the question of actual vindictiveness. Fardella filed a supplemental reply brief in which he reiterated that he need not prove actual vindictiveness, for it is sufficient for him to prove the appearance of vindictiveness or retaliation.

We believe remand is unnecessary. Fardella, without suggesting remand, has asked us to decide the issue on the record now before us. The factual record is complete, and the parties have fully briefed the issue. At the outset, we hold that the record contains neither evidence nor reasonable inferences based on the evidence that the Commission was guilty of actual vindictiveness. We will therefore confine our discussion to the issue that Fardella raised in the district court and presses on appeal—namely, whether the Commission is barred from reopening his case because the facts give rise to an appearance of retaliation.

Fardella bases his factual claim on evidence showing that the Commission sought additional information from the Philadel-phia strike force after he filed his petition for a writ of habeas corpus. Fardella contends that because the Commission acted after he exercised his right to judicial review, their actions gave rise to an appearance of retaliation and deprived him of his liberty without due process of law. Additionally, he contends that the Commission's conduct will deter other prisoners from asserting their rights to judicial review. In support of his position, he relies on *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), which, with some exceptions, forbids a prosecutor from enhancing charges against a defendant who is convicted of a misdemeanor and seeks a trial de novo. He also relies on *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which, with certain exceptions, forbids a court from enhancing a defendant's punishment when he is retried after successfully appealing his initial conviction. In these cases, the Court held that due process requires that the prisoner be free not only from actual vindictiveness but also from the apprehension of retaliation, because fear of vindictiveness may chill the prisoner's exercise of procedural rights. In short, under these circumstances, the likelihood of vindictiveness creates a presumption of vindictiveness.

*Blackledge* and *Pearce* involved criminal prosecutions and are not dispositive of parole proceedings. Parole determinations are not adversary proceedings. *Hyser v. Reed,* 318 F.2d 225, 237 (D.C.Cir. 1963). Consequently, prisoners seeking parole are not afforded all of the protection of the due process clause to which defendants in criminal trials are entitled. *Franklin v. Shields,* 569 F.2d 784, 800 (4th Cir.1978) (en banc).

Congress recognized the distinction between defendants presumed to be innocent and convicted prisoners. It has empowered the Commission to "modify or revoke an

---

7. Fardella's co-defendants have since been reclassified to Greatest I on the basis of factors unrelated to the issues before the court. The Commission therefore has determined that there is no need to reopen their cases for consideration of the information disclosed by the transcript.

order paroling any eligible prisoner," [8] to consider "the nature and circumstances of the offense," [9] and to promulgate rules and regulations for the exercise of these powers.[10] Congress has emphasized the Commission's discretion by exempting parole determinations from judicial review under the Administrative Procedure Act.[11] Neither the statute nor the Commission's regulations prescribe any limitation of time on the power to modify parole. In this case, as we have shown, the Commission fully complied with the statute and its regulations.

■ There remains the question whether the Commission's compliance with the pertinent statutes and regulations after Fardella filed his application for a writ of habeas corpus violated the due process clause. The answer to this question, we believe, may be found in *United States v. Goodwin*, —— U.S. ——, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), which dealt with a prosecutor's pretrial enhancement of charges after the defendant demanded a jury. In *Goodwin,* the Court distinguished between a prosecutor's enhancement of charges before an initial trial, which is permissible, and his enhancement of charges before a de novo trial, as in *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), which violates the due process clause. The Court rested this distinction on the following reasons:

> In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which

he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision. 102 S.Ct. at 2493.

Thus, when a prosecutor changes the charges at the pre-trial stage, no presumption of vindictiveness arises. 102 S.Ct. at 2494.

The decision of the Commission much more closely resembles that of the pre-trial prosecutor than that of the post-trial prosecutor. We have held that when the Commission makes its initial determination of parole, it need not independently investigate all evidence concerning the offense that is in existence. The Commission, like the pre-trial prosecutor, may consider and evaluate new information that comes to its attention. In this situation, as in the pre-trial setting, no presumption of vindictiveness arises. Fardella's claim that the Commission's conduct violated the due process clause therefore lacks merit. The judgment of the district court is

REVERSED.

---

8. 18 U.S.C. § 4203(b)(3).

9. 18 U.S.C. § 4206(a).

10. 18 U.S.C. § 4203(a)(1).

11. 18 U.S.C. § 4218(d).