Michael J. SCHISELMAN, Petitioner–Appellant,

v.

UNITED STATES PAROLE COMMISSION, Carol Pavilak, Regional Commissioner, North Central Region, and Dudley Blevins, Warden, United States Penitentiary, Terre Haute, Indiana, Respondents–Appellees.

No. 87–1471.

United States Court of Appeals, Seventh Circuit.

Submitted July 25, 1988.*

Decided Sept. 23, 1988.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Michael J. Schiselman, North Miami Beach, Fla., for petitioner-appellant.

John Daniel Tinder, U.S. Atty., Indianapolis, Ind., Gerald A. Coraz, Asst. U.S. Atty., for respondents-appellees.

Before CUMMINGS, WOOD, Jr. and CUDAHY, Circuit Judges.**

PER CURIAM.

*Pro se* petitioner-appellant Michael J. Schiselman filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging procedures used by the United States Parole Commission in reopening his initial parole determination and conducting a special reconsideration hearing. On appeal from the dismissal of that petition, we reversed the judgment of the district court and remanded the case "with instructions to grant the petition unless the Parole Commission provides a new hearing ... within 60 days." *Schiselman v. United States Parole Commission*, No. 85–2594, slip op. at 8 (7th Cir. November 12, 1986) [805 F.2d 1038 (Table)] (*Schiselman I*).

The Parole Commission did conduct a new hearing within 60 days. Schiselman returned to the district court with a Motion

** Chief Judge Bauer granted Schiselman's request that this appeal be decided by the same panel which decided his first appeal. *See* Operating Procedures, No. 6 *contained in Practition-* *er's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit* at 167 (1988).

to Grant Pending Petition, alleging that the Parole Commission had not followed either its own regulations or the mandate of this court in conducting the second special reconsideration hearing. The district court found that Schiselman had received the relief we ordered. In denying him leave to proceed *in forma pauperis* on appeal, the court stated that his other complaints with the conduct of the second hearing were not properly before it as he had not exhausted his administrative remedies. Schiselman timely filed his notice of appeal. The sole issue before this court is whether the Parole Commission conducted the second special reconsideration hearing in accordance with applicable regulations as ordered by this court.[1]

## A. BACKGROUND

### 1. Parole Statute and Regulations

The Parole Commission uses guidelines promulgated under the authority of 18 U.S.C. § 4203(a)(1) to determine how long a prisoner should be incarcerated. The guidelines are based on the characteristics of both the offense and the offender. *See*

28 C.F.R. § 2.20; *Solomon v. Elsea*, 676 F.2d 282, 285 n. 4 (7th Cir.1982). Offenses receive a severity rating while an offender's parole prognosis is rated by his salient factor score. 28 C.F.R. § 2.20(b), (d), and (e). The two ratings are used with a grid to give a suggested period of imprisonment, referred to as the guideline range.[2] The Commission may set a presumptive release date either above or below the guideline range if the circumstances warrant it. 28 C.F.R. § 2.20(c).

Section 2.28 may be used by the Commission to reevaluate a prisoner's parole determination. At the time of Schiselman's first reconsideration hearing, § 2.28(f) provided:

> Upon receipt of new and significant adverse information ... the Regional Commissioner may refer the case to the National Commissioners with his recommendation and vote to schedule the case for a special reconsideration hearing. Such referral by the Regional Commissioner shall automatically retard the prisoner's scheduled release date until a final decision is reached in the case.... [T]he hearing shall be conducted in accordance

---

**1.** The Commission asserts in its jurisdictional statement that this court lacks jurisdiction over this action because Schiselman failed to exhaust his administrative remedies, apparently relying on a statement of the district court that "if petitioner is dissatisfied with the results of the hearing, he must exhaust his administrative appeals before receiving judicial review on the merits by way of a new petition for habeas corpus relief." *Schiselman v. United States Parole Commission*, No. TH 85–49–C, unpublished order at 1 (S.D.Ind. April 7, 1987). The district court apparently raised the exhaustion question *sua sponte* in ruling on Schiselman's request to proceed *in forma pauperis* on appeal rather than in ruling on the merits of his motion.

Under the circumstances of this case, in which appellant's primary argument is that the Parole Commission failed to comply with an express order of this court, it is far from clear that he is required to exhaust his administrative remedies before seeking relief in federal court. We need not address that issue, however, because appellees never raised the exhaustion issue in district court and have therefore waived it. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir.1987). The cases cited by appellees in support of their jurisdictional challenge, do not, in any event, so hold. Exhaustion of administrative remedies is not a jurisdictional prerequisite here. *See Jackson v. Carlson*, 707 F.2d 943,

949 (7th Cir.), *cert. denied*, 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983); *Anderson v. Miller*, 772 F.2d 375, 377 (7th Cir.1985), *cert. denied*, 475 U.S. 1021, 106 S.Ct. 1210, 89 L.Ed.2d 322 (1986). Schiselman is a federal, not a state prisoner; the concerns of comity and federalism which drive the exhaustion doctrine are not implicated. *See Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 1674–75, 95 L.Ed.2d 119 (1987) (quoting *Rose v. Lundy*, 455 U.S. 509, 515–16, 102 S.Ct. 1198, 1201–02, 71 L.Ed.2d 379 (1982)).

**2.** The terms "offense" and "offense behavior" refer to the conduct for which the prisoner is currently serving his sentence. *See* 28 C.F.R. § 2.20; United States Parole Commission Rules and Procedures Manual § 2.20–04 (November 4, 1985) (rating reflects "present offense behavior"); *see also Silberberg v. United States Parole Commission*, 483 F.Supp. 1280, 1283 (M.D.Penn. 1980) ("§ 2.20 may only be used to determine the offense severity of sentences a prisoner is currently serving"). Section 2.20 lists a variety of federal offenses for which severity ratings have been predetermined. The salient factor score, on the other hand, is designed to predict the prisoner's potential risk of parole violation. 28 C.F.R. § 2.20(e). It includes prior convictions, employment history, etc. 28 C.F.R. § 2.20, Salient Factor Scoring Manual.

with the procedures [for an initial parole hearing]. The entry of a new order following such hearing shall void the previously established release date.

28 C.F.R. § 2.28(f) (1984).

As we have previously noted,

[t]he choice of information that the Commission may consider is ... quite broad.... In relying on information that has not been proved in an adversary setting, the Commission runs the risk of relying on inaccurate information. Partly for this reason, prior to the parole hearing prisoners are to be given reasonable access to documents which will be used in making the parole determination. See 18 U.S.C. § 4208(b)(2). ... [A]n inmate is to be given an opportunity to present and respond to evidence. See 18 U.S.C. §§ 4207 and 4208(e).

*Solomon,* 676 F.2d at 288; *see also* 28 C.F.R. § 2.19(c).

## 2. Facts

### a. First Reconsideration Hearing

■ When he filed his habeas petition, Schiselman was an inmate at the United States Penitentiary in Terre Haute, Indiana. He is now incarcerated at the Metropolitan Correctional Center in Miami, Florida.[3] Schiselman was convicted of various federal fraud crimes and was sentenced to serve 14 years. At his initial parole hearing, his presumptive parole date was set at May 12, 1988, after serving 64 months of his sentence. About a year later, the Parole Commission reopened his parole determination proceeding after receiving a letter from the United States Probation Office which reported, among other things, that Schiselman had attempted to escape from a state jail using a weapon during the time his federal charges were pending. Based on this information, the Parole Commission changed Schisel-

man's presumptive parole date to January 12, 1990, adding 20 months to his time to be served.

Throughout the special reconsideration hearing and the regional and national appeals, the Commission contended that the escape had been attempted on April 10, the apparent date on the copy of the jail incident report which the Commission had received. The National Commission affirmed, finding that the incident report "dated 4/10/80, indicates that you did attempt to escape while in the Floyd County Jail. You present no verification to refute the accuracy of the information on which your parole decision was based." Notice of Action (September 19, 1984). Just a few days before the National Commission affirmed the parole redetermination, the Commission learned that the escape had actually been attempted on April 19. The National Commission then simply substituted "4/19/80" for "4/10/80" in its order. We held that the Commission had to give Schiselman an opportunity to contest the charge based on the April 19 date, consistent with its own regulations, *see* 28 C.F.R. § 2.55(f),[4] and ordered that his petition for a writ be granted unless he was given a new hearing. We also pointed out that the Commission had incorrectly applied its guidelines to the new information by treating the escape attempt as though it were a federal crime of which Schiselman had been convicted, rather than as information about his past history. *See Schiselman I,* unpub. order at 7–8. Pursuant to our mandate, the district court ordered that the writ be granted unless the Parole Commission conducted a new hearing within 60 days.

### b. Second Reconsideration Hearing

A second special reconsideration hearing was conducted within 60 days. Schiselman

---

3. Schiselman's transfer to a prison outside of this circuit and the accompanying custodial change does not affect our jurisdiction. *Santillanes v. United States,* 754 F.2d 887, 888 (10th Cir.1985).

4. Section 2.55(f) then provided that if new and significant adverse information was received during the parole determination proceeding (i.e., after the hearing but before review was concluded, *see* 50 Fed. Reg. 40,375 (October 3, 1985)) the prisoner was to be given a rehearing and a right to request disclosure of the new information.

testified that although he was not sure which county jail he was in on the date of the alleged escape attempt, he had not attempted to escape from any jail. He further testified that he believed that the report of an escape attempt had been fabricated and provided evidence that the jailer who had prepared the report was later fired and that no report of the attempted escape had been made to the District Attorney for the area, who would ordinarily receive such a report. Schiselman also called the hearing panel's attention to his excellent institutional record, including his participation in a drug program and his prison work as a clerk and an x-ray technician. He presented letters of commendation from a prison official at Terre Haute, a Terre Haute physician, and the unit manager of Terre Haute's Substance Abuse Program, as well as a letter from the federal judge who sentenced him recommending that he be paroled when he became eligible.

The hearing examiners first recalculated Schiselman's guideline range at 64–78 months, rather than the original range of 52–64 months. This recalculation, unchallenged on appeal, resulted from the hearing panel's discovery of an error made in counting Schiselman's prior convictions which changed his salient factor score from 6 to 5. Both examiners then concluded that a presumptive parole date exceeding the guideline range was warranted by Schiselman's attempted escape from a state jail

using a weapon and his use of a weapon in committing the state offense of theft by deception,[5] but disagreed on how much, one suggesting 6 months, the other 12. The Regional Commission set Schiselman's presumptive parole date at July 12, 1990, for a total of 90 months, 12 months over the 78–month maximum indicated by the guidelines.

Thus, Schiselman's initial presumptive parole date of May 12, 1988, which had been changed after the first reconsideration hearing to January 12, 1990, was, reset to July 12, 1990, following the second court-ordered hearing.[6]

## B. ISSUES

Schiselman filed a Motion to Grant Pending Petition with the district court alleging several defects in the second special reconsideration hearing: 1) The hearing was conducted pursuant to 28 C.F.R. § 2.28(a) rather than § 2.28(f) as our order had directed. 2) The Commission erroneously relied on his alleged use of a firearm in committing a state theft offense in exceeding the guideline range. 3) The Commission added 6 months to his parole term as a penalty for his having successfully pursued his habeas relief. 4) The Commission failed to give meaningful consideration to the favorable information which he presented at his second reconsideration hearing. We address each of these issues in turn.[7]

---

5. According to the letter received from the Probation Office,

> Schiselman entered Parde's Jewelry Store, Rome, Georgia, [and] produced an identification card ... identifying Schiselman as a Federal Law Enforcement Agent. Schiselman ... advised the assistant manager that a large quantity of diamonds had been stolen in the southeastern United States. The defendant further reported that he was investigating the alleged thefts and that he (Schiselman) was to take the diamonds to the Federal Building where a United States Magistrate, [sic] and a gemologist were to examine the businesses [sic] diamonds. The assistant manager closed the store and accompanied the defendant to his automobile. Investigative reports further reveal that Schiselman produced a gun and pointed it at the assistant manager and attempted to leave Rome, Georgia.... Schiselman entered into a negotiated plea of theft by deception....

6. Schiselman's presumptive parole date, based on the report of an attempted escape and the circumstances surrounding the state theft by deception offenses, has resulted in his serving more time than if he had actually been convicted of the federal crime of attempted escape (which is how the Parole Commission treated, wrongly, we held, the escape attempt at issue in *Schiselman I*).

7. Schiselman does not argue that the Parole Commission failed to correct the specific procedural errors identified by this court in *Schiselman I* (i.e., the Parole Commission's failure to provide him with an opportunity to respond to information concerning an attempted escape on April 19 and treatment of the attempted escape as a separate offense). Nor does Schiselman take issue with the Parole Commission's reduction of his salient factor score from six to five as a result of correcting a mathematical error. From the hearing summary it appears that the

## C. DISCUSSION

### 1. Standard of Review

We may not reverse the Parole Commission's decision unless, absent procedural or legal error, it is "arbitrary, irrational, unreasonable, irrelevant or capricious." H.R. Conf. Rep. 838, 94th Cong., 2d Sess. 27, *reprinted in* 1976 U.S.Code Cong. & Ad. News 335, 351, 359, *quoted in Solomon,* 676 F.2d at 287. The accepted standard of review is whether there is a rational basis in the record for the Commission's conclusions as set forth in its statement of reasons. *Solomon,* 676 F.2d at 290.

### 2. 28 C.F.R. § 2.28(a)

■ In notifying Schiselman of the new hearing, the Commission indicated that it was going to "reopen and schedule [a] special reconsideration hearing" giving as its reason for the action "28 C.F.R. § 2.28(a)—court order." Section 2.28(a), however, governs hearings for consideration of "new, favorable information," which the information concerning an attempted escape from state custody clearly was not. The appropriate section, as we indicated in *Schiselman I,* is § 2.28(f), which deals with reopening cases to consider "new, adverse information." On appeal, the Commission contends that the reference to § 2.28(a) is a typographical error. In any event, in determining whether appellant's second reconsideration hearing was conducted in accordance with § 2.28(f) we do not find the reference to § 2.28(a) in the notice of action dispositive. Our order made clear that the new hearing was to be one pursuant to § 2.28(f). The reference to a "special reconsideration hearing," as well as later documents related to the hearing, indicate that the Commission understood that it was to conduct, and did in fact conduct, a special reconsideration hearing to consider new adverse information as authorized by § 2.28(f).

### 3. "New, Adverse Information"

■ More compelling is Schiselman's argument that the Parole Commission erred in basing its second reconsideration decision, in part, on his commission of a state theft offense with a firearm. This information was contained in the same letter from the Probation Office which informed the Parole Commission of the attempted escape. The text of the letter suggests that its main purpose was to inform the Commission of the circumstances surrounding the state offense.[8]

The record does not reveal whether the Commission knew of the circumstances surrounding the state offense at the time of Schiselman's *initial* parole determination. His initial May 12, 1988 date (serving 64 months) was set at the top of the guideline range and appears to have been based solely on his offense severity level[9] and salient factor score. The record does not contain the hearing summary of Schiselman's initial parole determination proceeding.

The hearing summary for the first reconsideration hearing indicates the Commission was aware that Schiselman had served 34 months of the 10-year sentence he received on the state charge prior to entering federal custody. It is logical to infer that the Commission was, at the very least, aware that Schiselman had been convicted and sentenced on the state charge. In any event, the Commission concedes, as it must,

---

examiners discovered the error during the hearing; therefore it is clear that to the extent the discovery of the error was new information, *see McClanahan v. Mulcrome,* 636 F.2d 1190, 1191 (10th Cir.1980), Schiselman had no notice of it prior to the hearing. Schiselman does not claim that the new salient factor score is incorrect.

**8.** For example, the letter alleges that at his initial hearing, Schiselman "advised the hearing examiners that his state sentence (theft by deception) was directly related to his federal of-

fense." The letter goes on to recount the circumstances of the state offense at length, *see* note 5, *supra,* apparently to demonstrate that the state offense "had absolutely nothing to do with the federal offense."

**9.** With regard to offense severity, the Commission noted that Schiselman "participated in fraud, check kiting, and theft of an estimated $584,000.00 from the federal government, banks, small businesses and individuals." Notice of Action of June 22, 1983.

that the particulars of the state offense contained in the letter from the Probation Office were before the Commission at least at the time of the first reconsideration hearing.

Information may be new under § 2.28(f) even though it existed at the time of the original parole determination hearing. *See Goble v. Matthews*, 814 F.2d 1104, 1108 (6th Cir.1987); *Fardella v. Garrison*, 698 F.2d 208 (4th Cir.1982); *Iuteri v. Nardoza*, 662 F.2d 159 (2d Cir.1981); *Fox v. United States Parole Commission*, 517 F.Supp. 855 (D.Kan.), *aff'd*, No. 81–1432 (10th Cir. 1981); *McClanahan v. Mulcrome*, 636 F.2d 1190 (10th Cir.1980); *Williams v. United States Parole Commission*, 707 F.2d 1060 (9th Cir.1983). Here, however, the information did not merely exist; it was presented to and considered by the Commission and the Commission explicitly chose to disregard it. The main purpose of the Probation Office letter was to take issue with Schiselman's earlier assertion that his state and federal crimes were related. *See* note 8, *supra*. The bulk of the letter described Schiselman's theft by deception offense. *See* note 5, *supra*. The hearing summary following the first reconsideration hearing stated:

> The Panel has also reviewed the available information concerning the untruthfulness with regards to the overall events and the attempted restitution. *The Panel does not see these factors as being indicating factors that affected the previous decision* and, therefore, is of the opinion a recommendation to change that portion of the decision is not being made.

Notice of Action (April 6, 1984) (emphasis added). We believe the fact that the Commission was aware of the information at the first reconsideration hearing, yet chose not to rely on it, precludes its use at the second reconsideration hearing.

The Commission's position is that no "new" information was considered at the second hearing and we agree. It then maintains Schiselman was on notice that the same information which was considered at the first reconsideration hearing was to

be considered at the second and that "[t]he purpose of 28 C.F.R. § 2.55(g) was realized in that Appellant had notice of the content of the new hearing." We disagree.

Section 2.55(g) provides for disclosure of documents:

> ... Whenever a case is reopened for a new hearing and there is a document the Commission intends to use in making its determination, a copy of the document shall be forwarded for inclusion in the prisoner's institutional file and the prisoner shall be informed of his right to request disclosure of the document pursuant to this section.

The notice for the second hearing merely indicated that the parole determination was being reopened pursuant to a court order. The court ordered a new parole hearing in accordance with our mandate, which in turn referred to our order in *Schiselman I*. *Schiselman I* dealt solely with the attempted escape for good reason; the escape attempt was the only new adverse information relied on by the Commission at the first hearing. The notice Schiselman received of the first reconsideration hearing stated that the Commission was "[r]eopening and schedul[ing] for a special reconsideration hearing, pursuant to 28 CFR 2.28(f), to consider USPO's letter of December 28, 1983 and attachment," giving as its specific reason "[n]ew adverse information regarding an attempted escape in April, 1980." Notice of Action (February 1, 1984). The course of these proceedings would not have put Schiselman on notice that a charge that he used a firearm during the commission of the state offense would be considered at the second hearing. *Cf. Goble*, 814 F.2d at 1108 ("hearing panel's failure to address a particular matter ought not forever bar the Commissioner from raising the matter *and giving the prisoner an opportunity to respond*") (emphasis added).

Implicit in the Commission's position is the notion that the Commission is free in a second reconsideration hearing to evaluate all of the information before it, notwithstanding the fact that it expressly accorded no weight to the information earlier. *Cf.*

*id.,* (Commission has implied authority to reaffirm a presumptive release date on the basis of information contained in the file but *inadvertently* overlooked). We do not believe that this is the correct approach, totally apart from the notice problem already discussed. Our conclusion finds further support in the discussion of new information contained in the Commission's own manual and caselaw. In defining "new" information the courts have made it clear that the purpose of the special reconsideration hearing is to reconsider the parole *"in light of the new information." Iuteri,* 662 F.2d at 161 (emphasis added). The United States Parole Commission Manual states that § 2.28(f) is the appropriate mechanism for reopening cases "to consider new information about the prisoner's original offense behavior or earlier criminal activity *that would have resulted in a different decision had the information been presented to the Commission at the time of the initial parole hearing." United States Parole Commission Rules & Procedures Manual* § 2.28–02(f) at 42 (March 1, 1982) (emphasis added). The Fourth Circuit has observed that "[t]his definition places emphasis on the effect the new information would have had at the initial hearing if it had been considered...." *Fardella,* 698 F.2d at 211. Here, the information was disregarded by the Parole Commission at the time of the first reconsideration hearing. In this case, we find it impossible to conclude that the information at issue "would have resulted in a different decision." We know that it did not. We therefore hold that it was improper for the Commission to rely on the circumstances of the state theft by deception offense as justifying exceeding the guidelines. Schiselman must be given a new hearing to reconsider only the information which justified the increase in his presumptive parole date at his first reconsideration hearing, the attempted escape.

4. Vindictiveness

■ There is some appeal to Schiselman's argument that the Parole Commission vindictively added at least 6 months to his presumptive parole date. After the first reconsideration hearing his parole date was January 1990. Following a successful appeal to this court, his May 1988 parole date was changed to July 1990. As we have said, part of the overall increase is accounted for by the Commission's correction of an error in Schiselman's salient factor score, of which he does not complain. *See supra* note 7. However, a presumptive parole date at the top of his new guideline range would still have been 6 months *less* than his first reconsideration date. The Commission exceeded those guidelines by 12 months. Schiselman claims that given his excellent prison record a presumptive parole date 6 months over the first reconsideration date "gives rise to an appearance of retaliation." The Commission, on the other hand, contends that the change in Schiselman's salient factor score was purely mechanical and that nothing in the record supports an allegation of vindictiveness, making no mention of the Commission's decision to exceed the guidelines by 12 months.

*Fardella v. Garrison,* addressed a prisoner's claim of vindictiveness. The court first found no evidence of actual vindictiveness, but went on to address Fardella's claim that the Commission's actions created an appearance of vindictiveness. The *Fardella,* court noted that the Supreme Court has held that "due process requires that the prisoner be free not only from actual vindictiveness but also from the apprehension of retaliation, because fear of vindictiveness may chill the prisoner's exercise of procedural rights.... [U]nder these circumstances, the likelihood of vindictiveness creates a presumption of vindictiveness." 698 F.2d 208 at 212 (construing *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). The court went on to recognize the distinction between the lesser level of protection afforded by the due process clause to convicted prisoners seeking parole and the greater level afforded criminal defendants.

In rejecting Fardella's claim of vindictiveness, the court compared the Commis-

sion's role in considering and evaluating new information to that of the prosecutor's pretrial enhancement of charges after the defendant's demand for a jury trial in *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1985). In *Goodwin*, the Supreme Court contrasted pretrial enhancement of charges with the enhancement of charges before a *de novo* trial. After trial begins,

> it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*Fardella*, 698 F.2d at 213 (quoting *Goodwin*, 457 U.S. at 381, 102 S.Ct. at 2492).

Here the Commission reevaluated and gave weight to information surrounding the circumstances of Schiselman's state offenses after previously concluding they should be given no weight.[10] Its decision to use this information as a partial justification for exceeding Schiselman's guideline range by 12 months when it never found *any* reason to exceed the guidelines at his two prior hearings casts some doubt on the Commission's claim in this appeal that nothing in the record supports an allegation of vindictiveness. *Cf. Colten v. Kentucky*, 407 U.S. 104, 117, 92 S.Ct. 1953, 1960, 32 L.Ed.2d 584 (1972) (presumption of vindictiveness does not apply if court imposing greater sentence "is not the court that is asked to do over what it thought it had already done correctly"). However, given our conclusion that the Commission must give Schiselman a new hearing, it is unnecessary to decide whether we must " 'presume' an improper vindictive motive" because "action detrimental to [Schiselman] has been taken after the exercise of a legal right." *Goodwin*, 457 U.S. at 373, 102 S.Ct. at 2488. *See generally Wasman*

*v. United States*, 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) (properly invoked presumption of vindictiveness rebutted).

### 5. Failure to Consider Favorable Information

■ Finally, Schiselman points to the wealth of favorable information, commendations, outstanding progress reports, and merit awards which he presented to the Commission. He contends that the Commission did not give this information "meaningful consideration." However, meaningful consideration does not mean that Schiselman is entitled to an early parole date.

The Commission mentioned the reports and other information he presented and said that they considered it. There is little doubt that Schiselman's prison record is excellent. Even so, the fact that we might give more weight to his accomplishments than did the Parole Commission, without more, neither compels nor supports the conclusion that the Commission did not meaningfully consider his accomplishments. Except for the matters already discussed in this opinion, "the information relied on by the Commission is sufficient to provide a factual basis for its reasons." *Solomon*, 676 F.2d at 290. Therefore we find no abuse of discretion on that basis.

### D. CONCLUSION

The decision of the district court must be reversed. We remand this case with instructions to grant the writ unless the Commission grants Schiselman a new reconsideration hearing within 60 days. At the new hearing, the Commission will be limited to determining Schiselman's parole date based on the new, adverse information of the attempted escape from state custody. The Commission may not justify altering Schiselman's previous parole determinations based upon any of the other infor-

---

**10.** Specifically, the Commission stated, "While on bond for the present federal offense, you committed a new state offense of theft by deception.... While committing the new state of-

fense you drew a firearm on the victim...." and relied, in part, on these facts as justifying its decision to exceed the guidelines.

mation contained in the Probation Office letter on which it declined to rely at the first reconsideration hearing. Thus exceeding Schiselman's guideline range by 12 months cannot now be justified by the Commission.

REVERSED AND REMANDED.